IRVING, P.J.,
for the Court:
¶ 1. M.N. was injured on the campus of Moss Point High School (MPHS) when a vertically placed, metal divider fell from the door of the MPHS band hall and hit her on the head. K.N., M.N.’s mother, filed suit, on M.N.’s behalf, against the Moss Point School District; Kim Staley, the Moss Point School District’s superintendent; and John Does 1-20. The school district filed a motion for summary judgment, which the circuit court granted after finding that the school district was immune from liability under the discretionary-function exception found in Mississippi Code Annotated section 11 — 46—9(l)(d) (Rev. 2012). M.N. appeals, arguing that the circuit court erred in granting summary judgment in favor of the school district.
¶2. For the reasons that follow, we reverse and remand for further proceedings.
FACTS
¶ 3. On October 23, 2009, during school hours, M.N. performed with the MPHS band in a school-sponsored pep rally. Following the pep rally, M.N. went inside the MPHS band hall, where she was informed that she could leave school early to prepare for the football game that night. M.N. exited the band hall, through its double-door entryway, to use her cellular phone to call her mother for a ride.
¶ 4. The double-door entryway has a vertically placed, removable metal divider located at its center.[1] On the day of the prep rally, the divider had been removed and replaced without being attached with the two screws. However, the divider would remain in place as long as one of the doors remained closed. When M.N. approached the double doors to reenter the band hall after calling her mother, other students rushed through the double doors, causing them to open simultaneously. The divider fell and struck M.N. on the forehead, injuring her.
¶ 5. After M.N. filed her complaint, the school district filed a motion for summary judgment, arguing that it was immune from liability under section ll-46-9(l)(d) because the school district’s decision to have a band at MPHS was discretionary, and, therefore, the school district’s deci *1283 sion to remove the divider for band-related activities was discretionary, as well. The school district also insisted that it was immune under Mississippi Code Annotated section ll-46-9(l)(v) (Rev. 2012) because the school district did not create a dangerous condition of which it failed to warn M.N.
¶ 6. In support of its motion for summary judgment, the school district provided excerpts from the depositions of Bernice Johnson, a former MPHS principal who was employed by the school district at the time of the incident, and Leroy Bridges, a former maintenance coordinator who was also employed by the school distinct at the time of the incident. In a supplemental brief in support of its motion for summary judgment, the school district provided an affidavit from Otis Carter, an MPHS band director.[2] Johnson, Bridges, and Carter each stated that they had no knowledge of any prior incidents or injuries caused by the divider. However, in his deposition, Bridges indicated that he was aware that the divider was sometimes removed by MPHS band personnel to allow the entry of an all-terrain vehicle (ATV) used to load band equipment into the band hall.
¶ 7. Included in M.N.’s response to the school district’s motion for summary judgment was an affidavit from architectural expert Peter Combs, who opined that the divider was a “hazardous” condition from which M.N. “did not have the chance to protect herself ... because she didn’t know the hazard existed!, as] [s]he had passed through the doorway many times[,] and there was never a problem.” M.N. also provided excerpts from her own deposition in which she stated that she was unaware of the condition of the double doors. She also noted that she was not using her cellular phone at the time of the incident. Additionally, M.N. provided an affidavit from Luther Woodland. In the affidavit, Woodland stated:
Prior to the prep rally that day, I saw a member of the band staff take down the [divider] of the band[-]hall door. After the prep rally, I was in the band hall near the door and saw the [divider] fall from the doorway and strike [M.N.] in the head.... I looked at the [divider] and the position it fell from and could see that no screws were holding it in place.
¶ 8. As stated, the circuit court granted the school district’s motion for summary judgment, finding that the school district was immune under section 11 — 46—9(l)(d). The circuit court found that “[e]ven though there may be other exceptions applicable, finding the actions discretionary affords the school [district] immunity from suit, and this ease must be dismissed.”
DISCUSSION
¶ 9. “The standard of review of a lower court’s grant of a summary judgment motion is de novo.” Miller v. Meeks, 762 So.2d 302, 304 (¶ 3) (Miss.2000) (citation omitted). Rule 56(c) of the Mississippi Rules of Civil Procedure informs us that summary judgment is proper only where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.” On a motion for summary judgment, “[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made.” Duckworth v. *1284 Warren, 10 So.3d 433, 436-37 (¶ 9) (Miss.2009) (quoting One S. Inc. v. Hollowell, 963 So.2d 1156, 1160 (¶ 6) (Miss.2007)). Because immunity is a question of law, “[an appellate court] conducts a de novo review of the application of the [Mississippi Tort Claims Act].” City of Jackson v. Harris, 44 So.3d 927, 931 (¶ 19) (Miss.2010).
¶ 10. Section 11-46-9 states, in pertinent part, as follows:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
* * *
(d) Based upon the exercise or perform-
ance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused; [or]
* * *
(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care.
¶ 11. “The language of [s]ection 11 — 46—9(l)(d) requires [an appellate court] to look at the function performed — not the acts that are committed in furtherance of that function — to determine whether immunity exists.” Little v. Miss. Dep’t of Transp., 129 So.3d 132, 136 (¶ 8) (Miss.2013) (citation omitted). “If the function is ministerial, rather than discretionary, there is no immunity for the acts performed in furtherance of the function. A ministerial function is one that is ‘positively imposed by law.’ ” Id. (citation omitted).
¶ 12. On appeal, M.N. argues that the school district’s duty to maintain a safe structure and make necessary repairs is ministerial, and that there was “[n]o room for judgment or discretion ... as it relates to the removal and replacement of the [divider] under the facts of this case.” M.N. insists that the school district failed to exercise ordinary care in executing its statutory duty to maintain a safe structure and to warn her about the divider. M.N. cites Mississippi Code Annotated section 37-7-301(d) (Rev. 2013), which states, “The school boards of all school districts shall have the following powers, authority[,] and duties in addition to all others imposed or granted by law, to wit: [t]o have responsibility for the erection, repairing and equipping of school facilities and the making of necessary school improvements[J”
¶ 13. In response, the school district first argues that M.N. seeks to have this court second-guess the school district’s decision concerning the operation of the band and the use of the band’s facilities. Next, the school district insists that because the operations of the band are discretionary, the decision to remove the divider was also discretionary, and the school district cannot be held liable. The school district further argues that it had no duty to “repair” under section 37 — 3—301(d) because the band hall door was not technically broken or in need of repair. Next, the school district argues that it did not create a dangerous condition, and that it had no knowledge of a dangerous condition, as no reports were ever made concerning the divider. Finally, the school district argues that the divider, in itself, was not a dan *1285 gerous condition, and that the divider only became a dangerous condition when the students rushed through the band-hall doors.
¶ 14. As indicated in Little, once a ministerial duty has been prescribed by statute, the manner in which that duty is performed cannot be said to be discretionary. Little, 129 So.3d at 136 (¶ 18). A plain meaning of the word repair is “to restore by replacing a part or putting together what is torn or broken.” Webster’s Third New International Dictionary of the English Language Unabridged 1923 (2002). Section 37-7-301(d) clearly prescribed a ministerial duty on behalf of the school district to repair its school facilities and to make necessary school improvements, which encompassed a duty to ensure that the divider at issue was properly replaced and secured. Therefore, the circuit court erred when it found that the school district was entitled to immunity under section ll-46-9(l)(d).
¶ 15. Although we have found that the school district is not protected under section ll-46-9(l)(d), we continue discussion as to the school district’s entitlement to immunity under section 11 — 46—9(l)(v), for if any one of the immunities enumerated in section 11-46-9 applies, then the school district is completely immune from any claims arising from the injuries caused by the divider. Little, 129 So.3d at 139 (¶ 15) (citing Pearl River Valley Water Supply Dist. v. Bridges, 878 So.2d 1013, 1015 (¶ 12) (Miss.Ct.App.2004)).
¶ 16. In order to enjoy immunity under section ll-46-9(l)(v), it was incumbent upon the school district to produce evidence at the summary-judgment stage that showed (1) M.N.’s injury was not caused by a dangerous condition that was caused or created by the school district or by the negligent or other wrongful conduct of a school-district employee; or (2) the school district did not have either actual or constructive notice of the dangerous condition or did not have an adequate opportunity to protect or warn against the dangerous condition; or (3) the dangerous condition was obvious to M.N. while exercising due care. Howard v. City of Biloxi, 943 So.2d 751, 754 (¶ 6) (Miss.Ct.App.2006).
¶ 17. In this case, the parties agree that M.N. suffered an injury on the property of the school district at MPHS, although the parties disagree on whether the injury was caused by a “dangerous condition.” As stated, the school district argues that a metal divider cannot be considered a dangerous condition. It is true that a metal divider, in and of itself, is typically not a dangerous condition. However, the metal divider in this case was vertically placed and was left unsecured between band-hall doors frequently used by students. Surely, in that context, the metal divider became a dangerous condition.
¶ 18. The school district insists that M.N. cannot show that the dangerous condition was caused by the negligent or other wrongful conduct of a school-district employee. Section ll-46-9(l)(v) provides immunity in cases where the governmental entity did not create the dangerous condition. However, in this case, there was evidence presented to show that the school district created the dangerous condition by leaving the metal divider unsecured, thereby preventing summary judgment under section ll-46-9(l)(v). Therefore, we find that under our de novo review, the school district was not entitled to summary judgment under either of the immunity sections urged in its motion for summary judgment. Accordingly, we reverse the judgment appealed from and remand this case for further proceedings consistent with this opinion.
*1286 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON,. FAIR AND JAMES, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.

. The divider was affixed with two Allen screws, which allowed easy removal.

. In his affidavit, Carter stated that he is the current MPHS band director, and that he has served in that capacity since 2012. He previously served as the MPHS band director from 1997 through 2008.